## ROBERT STONE *versus* CHARLES R. CODMAN.

Where a person employs a mechanic to make a drain for him, on his own land, and extending thence to a public drain, the mechanic procuring the necessary materials, hiring laborers, and charging a compensation for his services and disbursements the mechanic is deemed to be in the service of his employer to the effect of render ing his employer responsible to a third person who sustains damage by reason of want of skill, or want of due diligence and care, on the part of the mechanic.

Where imported wool belonging to the plaintiff, on which the duties had been paid, was injured by reason of the negligence of the defendant's servants, and in conse-quence it became necessary to take it out of the original packages, and in a few weeks afterwards an act of Congress was passed, under which, if the wool had remained in the original packages, the plaintiff would have been entitled to a return of duties, it was *held*, that the plaintiff was not entitled to additional dam-ages on account of being thus deprived of a right to claim a return of duties.

But if the market value of the wool in the original packages had been higher by reason of its being entitled to debenture under laws existing at the time when the injury was done, the plaintiff would have had a right to an increase of damages in consequence of being obliged to break the packages.

So, if the market value had been enhanced, at that time, by reason of a general expectation that an act of congress allowing a return of duties would be passed.

THIS was an action on the case for damage sustained by the plaintiff, through the negligence of the defendant's workmen in digging and making a drain, whereby tide water was let into the plaintiff's cellar, and his merchandise stored therein was wet and damaged.

It appeared that the defendant employed one Lincoln, a mason, to dig and lay a drain from the defendant's stores, in the city of Boston, into the common sewer; and that by reason of the opening made by Lincoln and the laborers in his employment, water was let into the plaintiff's cellar, and his goods were wet.

The damage was occasioned from the 31st of May to the 3d of June, 1832, but was not discovered until the 21st. Part of the merchandise injured was a quantity of wool in bags, which had been imported, and on which duties had been paid. It became necessary to take out of the bags the wool which was wet, (and this was done immediately upon discovering what had happened,) in order to prevent further injury by its heating in the bags. The parts taken out were cleaned and dried and sold, and the residue was sewed up in the same

Stone
v.
Codman.

bags. By an act of Congress, passed July 14, 1832, entitle ,
" an act to alter and amend the several acts imposing duties
on imports," the proprietor of the wool, if it had remained in
the original packages, and had been put under the control of
the officer of the customs before the 3d of March, 1833,
would have been entitled to a return of a part of the duty
paid upon it. After the passing of the law, the bags of wool
which were uninjured, were lodged in the customhouse with
a view of claiming a return of duties. And it appeared that
there were not many sales of wool from the time when the
injury was discovered to the time of the trial, dealers in the
article generally preferring to keep it for the purpose of claim-
ing a return of the duties on the 3d of March, 1833. At the
time when the wet wool was taken from the bags, no notice
was given to the customhouse officers, and it was not taken
out under their inspection ; and it was contended on the part
of the defendant, that this should have been done, under the
general debenture laws and regulations. The plaintiff con-
tended that he was entitled to recover the amount of duties
which but for the wetting of the wool might have been claimed
by him of the government ; and if the whole Court should be
of opinion that he was entitled to claim any sum on account
of the loss of his right to a return of duties, the damages in
the verdict, if found for the plaintiff, were to be increased by
the addition of such sum.

The jury returned a verdict in favor of the plaintiff, and the
defendant moved for a new trial.

*March* 11*th.*   *S. Hubbard* and *T. Parsons*, for the defendant, said that the
making of the drain was a lawful act, the defendant having
obtained permission for that purpose from the city government ;
that the defendant employed a competent person ; and that as
respects the defendant, this was not the common case of
master and servant, but the plaintiff's remedy for the alleged
negligence was against Lincoln, the master workman. *Cuth-
bert* v. *Gostling*, 3 Campb. 515.

*B. Rand* and *Fiske*, for the plaintiff, cited as to the rule
of damages, *Clark* v. *Pinney*, 7 Cowen, 681 ; *Greening* v.
*Wilkinson*, 1 Carr & Payne, 625 ; *Baker* v. *Wheeler*, 8 Wen
dell, 505.

SHAW C. J. delivered the opinion of the Court.

The first point made in this case, for the defendant, is, whether he stood in that relation to Lincoln, the negligence of whom is the subject of the plaintiff's complaint, as that the maxim *respondeat superior* applies to him. It is contended that Lincoln contracted to construct the drain, and if consequential damage occasioned by his negligence or want of skill happened to the plaintiff, Lincoln himself and not the defendant, is responsible. This is often a question of much nicety, and various complicated cases may be stated, in which it would be extremely difficult to decide, whether the relation of master and servant, in legal contemplation, existed. No question has occasioned more discussion, or more difference of opinion among eminent English judges.

Without reviewing the authorities, and taking the general rule of law to be well settled, that a master or principal is responsible to third persons, for the negligence of a servant, by which damage has been done, we are of opinion, that if Lincoln was employed by the defendant to make and lay a drain for him, on his own land, and extending thence to the public drain, he Lincoln procuring the necessary materials, employing laborers, and charging a compensation for his own services, and his disbursements, he must be deemed in a legal sense, to have been in the service of the defendant, to the effect of rendering his employer responsible for want of skill, or want of due diligence and care, so that if the plaintiff sustained damage by reason of such negligence the defendant was responsible for such damage.

Another question submitted to the Court was, whether in the assessment of damages, the plaintiff was entitled to claim the amount of drawback, from the United States, to which the owner of the wool, not damaged, would have been entitled, had this wool been preserved in the original packages, and retained unsold till the ensuing 3d of March. It appears that the damage was sustained in June 1832, that the wool in question was imported wool and had paid a duty to the United States, that by a law passed on the 14th of July of the same year, this wool would have been entitled to a drawback, if it had been retained in the original bags unopened and lodged in the customhouse

*Stone*
*v.*
*Codman.*

*June 19th*

Stone
v.
Codman.

before the 3d of March next ensuing. This advantage the plaintiff lost as to certain bags of wool, by the necessity under which he was placed, of opening these bags, for the purpose of drying the contents, and this loss was claimed as an item of damage. The Court are of opinion, that no additional damages can be claimed on this ground.

This is not a case of wilful wrong, in which a plaintiff can be entitled to recover any thing like exemplary damages or smart money. It is a case where the plaintiff can make no such claim, and the defendant is only bound to pay a bare indemnity. It is in this respect, therefore, similar to a case of trover, or a breach of contract in relation to property, where the loss of the value of the property, as actually sustained, is the legal measure of damages.

In the case of *Whitwell* v. *Kennedy*, 4 Pick. 466, this, in similar cases, was settled to be the value of the property at the time when the damages were sustained, where the property is wholly lost or converted; and the same applies, in estimating the value of property to which any partial damage is done, in ascertaining the real damage, which the owner has sustained. The property is to be estimated in the same manner as it would be, if a jury could have been called on the spot, at the moment the damage was discovered, to estimate it. They would consider the market value of the property, on the day, and the degree, if any, to which that market value was diminished, by the wetting of the wool. If it had sustained no diminution of its market value, then the expense of removing, drying, repacking, and replacing in store, would be the amount of the damage. The drawback afterwards allowed by the government, upon certain species of imported wool, to which but for the accident in question, this wool would have been entitled, was a casual and accidental advantage, accruing afterwards, and originating in a measure, which took place after the facts fixing the plaintiff's claim to damages had all occurred. The plaintiff can no more avail himself of this after act of Congress, even if it enhanced the value of the wool, than if the defendant had been under contract to deliver wool of the same quality to the plaintiff on the 21st of June, and had failed to do so. The measure of damages

could not be enhanced by the act which passed on the 14th of July, although it is quite as probable as in the present case, that the wool, if delivered, would have been kept in the original packages to the 3d of March, deposited in the customhouse for the drawback. If indeed there was such a definite expectation, at that time, that a similar act would pass, as to occasion a difference in the market value of wool, in unopened bags, and wool in bags, which had been opened, the destruction of that quality, which gave them this increased market value, was a real and actual loss, for which the plaintiff would be entitled to indemnity.

We are not in any degree influenced by the argument, that the plaintiff himself was guilty of negligence in opening the bags, without obtaining the attendance and doing it under the inspection of a customhouse officer. It is impossible that the plaintiff could have foreseen that such an act would pass, and equally so, that it would be made a condition precedent, that the wool should remain in bags unopened, or be opened under the inspection of an officer of the customs ; and there could be no negligence, in not complying with a condition not then prescribed and which could not be anticipated.

A very different rule would apply, where goods are entitled to debenture by fixed laws, at the time the damage accrues, and where there is an actual difference in market value, between goods so entitled to debenture, and other goods, of like kind, not so entitled. In such case the loss of the right of debenture is a real and actual loss, of a portion of the intrinsic value, as much as that which would arise from destroying the colors or weakening the texture of the goods.

All that can be said is, that if the loss had happened at a later period, and after the right of drawback had attached, the loss might have been greater ; but this may be answered by saying, that in the mean time the plaintiff might have sold his goods, at the market price, and so not have realized the benefit arising from the drawback. I cannot distinguish it from a case, where after damage done to goods, and before the time of trial, events happen, by which the value of such goods is greatly enhanced or diminished.

Taking into consideration these subsequent events, and the

Stone
*v.*
Codman.

strong probability that the goods would not have been sold; it may often appear that the value at the time of the damage, may give more or less than a true indemnity ; still considering the importance of a fixed and certain rule, the strong probability that in the great majority of cases, the value at the time will afford the nearest approximation to an exact indemnity, the rule has been adopted, and we think ought to be adhered to.

Believing that the case falls within this rule, we are of opinion, that the loss of the benefit of drawback, under the circumstances of this case, was not a loss for which the plaintiff could claim damages in this action.

*Note.* On another ground, namely, that the verdict was against the weight of evidence, a new trial was granted.